THE STATE OF OHIO, APPELLANT, *v.* GIPSON, APPELLEE.

[Cite as *State v. Gipson* (1998), 80 Ohio St.3d 626.]

(No 96–1929—Submitted November 5, 1997 at the Cleveland–Marshall College of Law Session—Decided January 7, 1998.)

628

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, *Arthur A. Elkins* and *George J. Sadd,* Assistant Prosecuting Attorneys, for appellant.

*Paul Mancino, Jr.,* for appellee.

Douglas, J. The sole issue in this appeal may be phrased in terms of the following question: Did the trial court abuse its discretion and/or commit an error of law by imposing the mandatory fine and by requiring Gipson to satisfy that fine over the course of his probation? For the reasons that follow, we answer that question in the negative. Therefore, we reverse the judgment of the court of appeals on the issue before us and reinstate the judgment of the trial court in its entirety.

Statutes throughout R.C. Chapter 2925 provide for the imposition of mandatory fines for certain drug-related offenses, including certain drug abuse offenses in violation of R.C. 2925.11, and refer to a specific statutory procedure by which an offender who is both indigent and unable to pay may avoid imposition of mandatory fines. See, *e.g.,* R.C. 2925.11(E)(1)(a), 2925.03(D)(1), 2925.02(D)(1)(a), and 2929.18(B)(1). In the case at bar, Gipson was convicted of possession of cocaine in less than the bulk amount in violation of former R.C. 2925.11. At the time of the offense, former R.C. 2925.11 provided:

"(E)(1) Notwithstanding the fines otherwise required to be imposed pursuant to section 2929.11, 2929.21, or 2929.31 of the Revised Code for violations of this section and notwithstanding section 2929.14 or 2929.22 of the Revised Code, the

court shall impose * * * a mandatory fine of [$1,500] if the violation of this section was a felony of the fourth degree * * *.

" * * *

"(E)(5) No court shall impose a mandatory fine pursuant to division (E)(1) of this section upon an offender who alleges, in an affidavit filed with the court prior to his sentencing, that he is indigent and is unable to pay any mandatory fine imposed pursuant to that division, if the court determines the offender is an indigent person and is unable to pay the fine." (145 Ohio Laws, Part III, 5782.)

Former R.C. 2925.11(E) is similar to the current statutory framework in Ohio governing the imposition of mandatory fines for violations of R.C. 2925.11. See R.C. 2925.11(E)(1)(a) and 2929.18(B)(1).[2] Specifically, former R.C. 2925.11(E), like current provisions of Ohio law (R.C. 2925.11[E][1][a] and 2929.18[B][1] ), clearly requires that a sentencing court shall impose a mandatory fine upon an offender unless (1) the offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine, and (2) the court determines that the offender is in fact an indigent person and is unable to pay the mandatory fine. Neither of the two prerequisites for the avoidance of a mandatory fine occurred in the case at bar.

## I

### The Requirement of Filing

Former R.C. 2925.11(E)(5), like the current statutes governing the avoidance of mandatory fines for drug abuse offenders who are indigent and are unable to pay such fines (R.C. 2925.11[E][1][a] and 2929.18[B][1] ), clearly requires that the offender's affidavit must be filed with the court prior to sentencing. The phrase

---

2. R.C. 2925.11(E) currently provides, in part:

"In addition to any prison term * * * and in addition to any other sanction that is imposed for the offense under this section or sections 2929.11 to 2929.18 of the Revised Code, the court that sentences an offender who is convicted of or pleads guilty to a violation of division (A) of this section shall do all of the following that are applicable regarding the offender:

"(1)(a) If the violation is a felony of the first, second, or third degree, the court shall impose upon the offender the mandatory fine specified for the offense under division (B)(1) of [R.C. 2929.18] unless, as specified in that division, the court determines that the offender is indigent."

R.C. 2929.18 provides, in part:

"(B)(1) For a first, second, or third degree felony violation of any provision of Chapter 2925., 3719., or 4729. of the Revised Code, the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section. If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender."

"prior to his sentencing" in former R.C. 2925.11(E)(5) and the phrase "prior to sentencing" in R.C. 2929.18(B)(1) could be interpreted to mean that the affidavit must be filed prior to a scheduled sentencing hearing. Conversely, the phrases could be interpreted to mean that the affidavit must be filed prior to the filing of a journal entry reflecting the trial court's sentencing decision. Although we believe that the best practice would be to require the filing of the affidavit prior to the *sentencing hearing*, we interpret former R.C. 2925.11(E)(5) and the current analogous provisions of R.C. 2929.18(B)(1) to mean that the affidavit must be formally filed with the court prior to the filing of a journal entry reflecting the trial court's sentencing decision.

The court of appeals' majority apparently determined that Gipson's affidavit was timely "filed" prior to sentencing because defense counsel had attempted to submit the affidavit to the trial judge at the sentencing hearing. The court of appeals' majority reached this conclusion even though there is absolutely no indication in the record that the affidavit was formally filed with the clerk of court and time-stamped at any time prior to the filing of the trial court's sentencing decision. We disagree with the judgment of the court of appeals' majority on the question of whether Gipson's affidavit was timely "filed."

We hold that the requirement of former R.C. 2925.11(E)(5) (and the current analogous provisions of R.C. 2929.18[B][1] ) that an affidavit of indigency must be "filed" with the court prior to sentencing means that the affidavit must be delivered to the clerk of court for purposes of filing and must be indorsed by the clerk of court, *i.e.*, time-stamped, prior to the filing of the journal entry reflecting the trial court's sentencing decision. We reach this conclusion based, in part, upon a number of our recent decisions involving an analogous requirement of R.C. 2945.05 that a jury waiver form must be "filed" in a cause and made part of the record to effectuate a valid waiver of the right to trial by jury. Specifically, in a series of recent cases, we have definitively determined that the requirement in R.C. 2945.05 that a jury waiver form must be "filed in said cause and made a part of the record thereof" means that the form must be time-stamped and included in the record. See *State v. Pless* (1996), 74 Ohio St.3d 333, 658 N.E.2d 766; *State v. Haught* (1996), 76 Ohio St.3d 645, 670 N.E.2d 232; and *State v. Loesser* (1997), 80 Ohio St.3d 419, 687 N.E.2d 278. By analogy, R.C. 2929.18(B)(1) and former R.C. 2925.11(E)(5) are clear and unambiguous in requiring that an affidavit of indigency must be "filed" with the court prior to sentencing, and the act of filing certainly includes the concept of time-stamping. See, also, R.C. 2303.08 ("The clerk of the court of common pleas shall indorse on each pleading or paper in a cause filed in the clerk's office the time of filing."); and R.C. 2303.10 ("The clerk of the court of common pleas shall indorse upon every paper filed with him the date of the filing thereof.").

In the case now before us, the record clearly indicates that Gipson's affidavit of indigency was never formally filed with the court until it was submitted to the court as part of a motion to abate the mandatory fine.[3]  The motion to abate the mandatory fine was filed July 26, 1995, more than two weeks after the trial court had verbally pronounced sentence and more than a week after the filing of the trial court's sentencing entry.  Therefore, as Judge Patton noted in his concurring and dissenting opinion in the court of appeals, "Defendant did not file his affidavit of indigency with the trial court prior to sentencing.  In fact, defendant did not file his motion to abate the fine until eight days after sentencing.  Although the transcript of the sentencing shows defendant offered an affidavit at that time, he did not file that affidavit in compliance with the statute.  'Filing' for purposes of the statute requires the clerk of the court to indorse the time of filing on each pleading or filing.  * * * Because the affidavit was not timely filed, the trial judge should not have considered the affidavit in the first instance."

At oral argument before this court, a question arose whether the state had "waived" the issue concerning the timeliness of the "filing" of Gipson's affidavit since the state never raised that issue in the court of appeals.  However, we believe that the required filing of an affidavit of indigency for purposes of avoiding a mandatory fine is, in effect, a jurisdictional issue.  The present and former versions of R.C. 2925.11 require a sentencing court to impose a mandatory fine upon an offender unless the offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and unless the court determines that the offender is an indigent person and is unable to pay the mandatory fine.  R.C. 2925.11(E)(1)(a), 2929.18(B)(1) and former R.C. 2925.11(E).  Thus, the trial court could not have avoided imposing the statutory fine since the required affidavit of indigency was never properly "filed" with the court prior to sentencing.  The timeliness of the filing of Gipson's affidavit has been properly raised before this court, and, in our judgment, the fact that the affidavit was not properly filed prior to sentencing is, standing alone, a sufficient reason to find that the trial court committed no error by imposing the statutory fine.

---

3.  We are aware, of course, that Civ.R. 5(E) provides that "[t]he filing of pleadings and other papers with the court, *as required by these rules,* shall be made by filing them with the clerk of court, *except that the judge may permit the papers to be filed with the judge, in which event the judge shall note the filing date on the papers and forthwith transmit them to the office of the clerk.*" (Emphasis added.)  We are also aware that Crim.R. 49(C) refers to Civ.R. 5(D) regarding the requirements of "filing."  However, we note, in passing, that there is no indication in the record that the affidavit was ever handed to the trial judge at the sentencing hearing or that the trial judge accepted Gipson's affidavit as a formal "filing."  Moreover, during oral arguments before this court, counsel for Gipson expressly acknowledged that the trial judge refused to accept/receive the affidavit at the hearing, which apparently prompted counsel to "file" the affidavit with the clerk of court as part of Gipson's July 26, 1995 motion to abate the fine.

## II

### The Trial Court's Determination

Moreover, and in any event, even if Gipson's affidavit had been filed in a timely manner, the trial court's decision imposing the mandatory fine and requiring Gipson to satisfy that fine over the course of his probation was not an error of law and/or an abuse of the trial court's discretion. For purposes of former R.C. 2925.11(E) and the current analogous provisions of R.C. 2925.11(E)(1)(a) and 2929.18(B)(1), an offender who files an affidavit alleging that he or she is indigent and is unable to pay a mandatory fine is *not* automatically entitled to a waiver of that fine. Once again, these statutes clearly require imposition of a mandatory fine unless (1) the offender's affidavit is filed prior to sentencing, and (2) the trial court finds that the offender is an indigent person and is unable to pay the mandatory fines. Here, the trial court suspended Gipson's jail sentence and placed him on probation to give him an opportunity to straighten out his life and to pay the mandatory fine. The transcript of the sentencing hearing suggests that Gipson was actively seeking employment at the time of the sentencing hearing, that he had managed to retain and pay for a private defense attorney, and that he was an able-bodied young man with some employment potential. Additionally, evidence at trial indicated that Gipson may have had an employment history. Under these circumstances, the trial court apparently believed that Gipson was capable of paying the mandatory fine through monthly cash payments or by performing community service. We find no error in this regard. Specifically, we find that the trial court could have reasonably determined that although Gipson was indigent at the time of the sentencing hearing, he was not "unable to pay" the mandatory fine over the course of his probation.

Nevertheless, the court of appeals' majority, in reversing that portion of the trial court's judgment imposing the mandatory fine, apparently concluded that the trial court had abused its discretion by requiring payment of the fine *in futuro* since there was no dispute at the time of the sentencing hearing that Gipson was, at that particular moment, indigent and unemployed. Specifically, the court of appeals' majority relied upon the case of *State v. Pendleton* (1995), 104 Ohio App.3d 785, 663 N.E.2d 395, wherein it is stated that "the mere possibility that the offender may be able to pay the fine in the future, or pay it in the future in installments, is not a proper basis on which to find that a defendant is not indigent." *Pendleton* at 788, 663 N.E.2d at 397 (interpreting former R.C. 2925.03[L]). See, also, *State v. Lefever* (1993), 91 Ohio App.3d 301, 309, 632 N.E.2d 589, 594 (" '[A] trial court may not properly use the mere possibility of an offender's future ability to pay a fine as the basis for determining that the imposition of that fine is not prohibited by [former] R.C. 2925.03[L].' "). The court of appeals' majority also relied heavily on *State v. Ruzicka* (Jan. 13, 1994),

Cuyahoga App. No. 64476, unreported, 1994 WL 11325, wherein it is stated, "[I]t is our reasoned opinion that a trial court abuses its discretion by imposing a mandatory fine where the defendant's affidavit of indigency remains unopposed and the appellate record does not contain sufficient evidence to support a conclusion that the defendant *was able to pay* the fine." (Emphasis added.) We respectfully disagree with the court of appeals' analysis of this issue.

With respect to the court of appeals' reliance on the above-quoted passage from *Ruzicka*, we note that there is no requirement in either the present or current versions of R.C. 2925.11 that a trial court must make an affirmative finding that an offender is *able to pay* a mandatory fine. To the contrary, former R.C. 2925.11(E)(5) and the analogous requirements of R.C. 2925.11(E)(1)(a) and 2929.18(B)(1) provide that a mandatory fine shall not be imposed on an offender where the offender has filed the required affidavit prior to sentencing and the trial court determines that the offender is an indigent person *and is unable to pay* the mandatory fine. In his concurring and dissenting opinion in the court of appeals, Judge Patton recognized, and we agree, that the burden is upon the offender to affirmatively demonstrate that he or she is indigent and is *unable to pay* the mandatory fine. Thus, the court of appeals' reliance on *Ruzicka* is misplaced. The issue here is *not* whether the record would support a determination that Gipson is able to pay the mandatory fine but, rather, whether the trial court committed an error of law and/or abused its discretion in finding that although Gipson was indigent at the time of the sentencing hearing, he was not "unable to pay" the mandatory fine over the course of his probation.

Moreover, the case at bar is clearly distinguishable from *Pendleton* and *Lefever*. Those two cases hold that a trial court abuses its discretion by imposing a mandatory fine where an indigent defendant has been sentenced to incarceration and will be unable to pay the statutory fine. For instance, in *Lefever*, the court of appeals found that a trial court had committed reversible error by imposing a mandatory fine upon an indigent defendant under the following circumstances: "Lefever filed an affidavit of indigency asserting that he could not pay the fines and that he has no assets of any kind. No evidence controverting these was produced. The record also shows that Lefever was sentenced to no less than five nor more than twenty-five years' incarceration, with five years' actual incarceration. Because Lefever's incarceration will prohibit him from retaining an income-producing job, he will not be in a position to pay the fines for at least five years." *Lefever* at 309, 632 N.E.2d at 594. Similarly, *Pendleton* involved a situation where an indigent defendant was sentenced to a term of incarceration and was ordered to pay a mandatory fine. Under these circumstances, the *Pendleton* court followed the reasoning and holding of *Lefever*. *Pendleton* at 787–788, 663 N.E.2d at 396–397. See, also, *State v. Gutierrez* (1994), 95 Ohio App.3d 414, 418, 642 N.E.2d 674, 676 (a trial court abuses its

discretion by imposing a mandatory fine under R.C. 2925.11 where the defendant's incarceration would preclude payment of the mandatory fine).

In contrast to *Pendleton*, *Lefever*, and *Gutierrez*, the trial court in this case suspended Gipson's sentence of incarceration, placed him on probation, and ordered him to satisfy the mandatory fine over the course of his probation. On this basis, and on the basis of Gipson's youth and physical stature, the trial court noted that "[t]here ought to be a lot of jobs he can handle, so I don't see any reason why he can't pay this [mandatory fine]." The trial court also offered Gipson a reasonable alternative to monthly cash payments, stating that "if he [Gipson] doesn't want to do it by cash, he can do it by community service." Therefore, although Gipson had no job at the time of sentencing, the trial court obviously determined that Gipson could work, could perform community service, and could satisfy the fine over the four-year period of probation. We have no reason to question the trial court's findings in regard to these matters.

Gipson protests, however, that it is never proper for a trial court to consider an offender's future ability to pay a mandatory fine because, according to Gipson, "[i]t is defendant's status at the time of sentencing that is determinative whether he is indigent." However, we do not believe that former R.C. 2925.11(E)(5) was intended to preclude a trial court from imposing fines on able-bodied defendants who are fully capable of work but who happen to be indigent and unemployed at the moment of sentencing. Obviously, for purposes of former R.C. 2925.11(E)(5) and the current analogous provisions of R.C. 2925.11(E)(1)(a) and 2929.18(B)(1), a trial court's determination whether an offender is indigent *and* is unable to pay a mandatory fine can (and should) encompass future ability to pay. If the General Assembly had intended otherwise, the statutes would have been written to permit a waiver of the mandatory fines based solely on a defendant's present state of indigency, and would not have also required trial courts to consider the additional question whether the offender is "unable to pay."

Accordingly, for the foregoing reasons, we reverse the judgment of the court of appeals on the sole issue before us and reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.