JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Lavelle Gibson ("Gibson") appeals his conviction for drug possession, drug trafficking, and possession of criminal tools. He claims his conviction is against the manifest weight of the evidence and is supported by insufficient evidence because there was no evidence he constructively possessed the drugs. Finding no merit to this appeal, we affirm.
 {¶ 2} At trial, Cleveland police officers, John Spahia and Charles Neidbalson, testified that on April 15, 2002 around 2:00 a.m., they heard loud music coming from Gibson's convertible parked on West Sixth Street. The officers approached the vehicle and requested Gibson's driver's license. While waiting for him to retrieve his license, Officer Spahia signaled Officer Neidbalson with his flashlight, directing him to what appeared to be drugs lying on top of two jackets in the back seat. Neidbalson obtained the drugs from the back seat while Spahia placed Gibson in handcuffs and transferred him to the police car. Gibson claimed the drugs belonged to the two people he drove downtown, Darryl Johnson and Walter Lanier.
 {¶ 3} Within minutes of handcuffing Gibson, the officers observed two men approach Gibson's car. Gibson identified them as the owners of the drugs. After the men ignored the officers' request to stop, the officers chased them on foot. When apprehended by the officers, they gave false names. The officers discovered 19 plastic baggies hidden on Johnson, $561 on Gibson, and a cell phone and pager in Gibson's car.
 {¶ 4} A police forensic lab specialist testified that the drugs found in the back seat of Gibson's car contained 14.47 grams of crack cocaine. Det. Rivera testified that crack cocaine is usually sold for $20 per rock and is typically wrapped in plastic baggies. He further explained that drug dealers operate in groups with one person holding the drugs and money, another brokering the deal, and a third person acting as the lookout. He also opined that drug dealers used cell phones and pagers to conduct their drug trade.
 {¶ 5} The jury found Gibson guilty of all three charges. The trial court sentenced him to a three-year prison term and ordered him to pay mandatory fines totalling $20,000.
 {¶ 6} Gibson appeals, raising three assignments of error.[1]
 Sufficiency and Weight of the Evidence
 {¶ 7} In his first and second assignments of error, Gibson argues that the verdict is not supported by sufficient evidence or the weight of the evidence because the State failed to prove that he constructively possessed the drugs. Specifically, Gibson contends that the drugs belonged to the passengers in his car and that he was never aware of the presence of the drugs in his car.
 {¶ 8} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus:
"Pursuant to Criminal Rule 29(A), a court shall not order an entry ofjudgment of acquittal if the evidence is such that reasonable minds canreach different conclusions as to whether each material element of acrime has been proved beyond a reasonable doubt."
 {¶ 9} See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19,23; State v. Davis (1988), 49 Ohio App.3d 109, 113. Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of theevidence to support a criminal conviction is to examine the evidencesubmitted at trial to determine whether such evidence, if believed, wouldconvince the average mind of the defendant's guilt beyond a reasonabledoubt. The relevant inquiry is whether, after viewing the evidence in alight most favorable to the prosecution, any rational trier of fact couldhave found the essential elements of the crime proven beyond a reasonabledoubt. (Jackson v. Virginia [1979], 443 U.S. 307, followed.)"
 {¶ 10} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held in State v. Thompkins (1997),78 Ohio St.3d 380, 386-387:
"* * * Weight of the evidence concerns the inclination of the greateramount of credible evidence, offered in a trial, to support one side ofthe issue rather than the other. It indicates clearly to the jury thatthe party having the burden of proof will be entitled to their verdict,if, on weighing the evidence in their minds, they shall find the greateramount of credible evidence sustains the issue which is to beestablished before them. Weight is not a question of mathematics, butdepends on its effect in inducing belief." (Citations omitted).
"* * * The court, reviewing the entire record, weighs the evidence andall reasonable inferences, considers the credibility of witnesses anddetermines whether in resolving conflicts in the evidence, the juryclearly lost its way and created such a manifest miscarriage of justicethat the conviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised only in theexceptional case in which the evidence weighs heavily against theconviction." (Citations omitted).
 {¶ 11} Gibson was convicted of possession of drugs under R.C.2925.11, drug trafficking under R.C. 2925.03, and possession of a criminal tool under R.C. 2923.24. Gibson contends that none of the convictions should stand because the State failed to produce any evidence that he ever possessed the drugs or ever had any knowledge of the drugs. He denies any involvement with the drugs and claims that the evidence demonstrates he was simply at the wrong place at the wrong time.
 {¶ 12} R.C. 2925.01 defines possession as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Possession may be actual or constructive. State v. Haynes (1971), 25 Ohio St.2d 264; State v.Hankerson (1982), 70 Ohio St.2d 87, syllabus. Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession. State v. Wolery (1976), 46 Ohio St.2d 316, 329. Constructive possession will be established where the accused was able to exercise dominion and control over the contraband. Id.
 {¶ 13} In the instant case, the drugs were found directly behind Gibson in the convertible, on top of his and Johnson's jackets, while he was the only person in the car. Additionally, Officers Spahia and Neidbalson testified that Gibson had $561 in cash on his person and that Johnson was found with 19 baggies hidden on him. Det. Rivera testified that baggies are typically used to wrap crack cocaine for purposes of selling the drug and that drug dealers operate in groups.
 {¶ 14} Applying the above standard to the instant facts, we conclude that a rational trier of fact could have found that, although Gibson did not exercise "actual" control over the cocaine, he was nonetheless able to exercise dominion or control over it. Accordingly, we conclude that Gibson's conviction for possession of the cocaine found in his car was supported by sufficient evidence. Moreover, we find that the conviction is supported by the weight of the evidence. The evidence of the money found on Gibson combined with his giving Johnson a ride and waiting in his car, demonstrated his knowledge of the cocaine and his involvement in its sale. We cannot say that the jury "lost its way" in finding Gibson guilty of drug possession.
 {¶ 15} Gibson also argues that his conviction for drug trafficking is based on insufficient evidence and is against the weight of evidence because there was no evidence that he had "knowledge" of the drugs and, therefore, he was incapable of "knowingly" preparing any drugs for shipment, distribution, or delivery for the purposes of selling the drugs. See R.C. 2925.03(A)(2). We disagree.
 {¶ 16} Although all the evidence demonstrating Gibson's knowledge of the drugs is circumstantial, it holds the same evidentiary value as direct evidence. See, State v. Jenks (1991), 61 Ohio St.3d 259, 272
(circumstantial evidence and direct evidence inherently possess the same probative value and in some instances certain facts can only be established by circumstantial evidence).
 {¶ 17} As discussed above, the State presented sufficient evidence demonstrating that Gibson "constructively" possessed the drugs. We also find that the jury's verdict was supported by the weight of the evidence considering Gibson's constructive possession of the drugs in conjunction with the $561 discovered on him, the baggies found on Johnson, and the fact Gibson was waiting in his car. Based on this evidence, we cannot say that the jury lost its way or that the guilty verdict constitutes a manifest miscarriage of justice.
 {¶ 18} Gibson further argues that because the State offered no evidence that he possessed the drugs, he cannot be convicted of possession of a criminal tool. Because we have already found that Gibson constructively possessed the drugs, we also find that his use of his car in holding the drugs and facilitating the sale of the drugs, constitutes a criminal tool. See R.C. 2923.24(A). Accordingly, we find his conviction for possession of a criminal tool is supported by the sufficiency and weight of the evidence.
 {¶ 19} Gibson's first and second assignments of error are overruled.
Mandatory Fines
 {¶ 20} Gibson argues in his third assignment of error that the trial court abused its discretion when it ordered him to pay the mandatory fines for drug possession and drug trafficking, even though the trial court declared him indigent for purposes of appeal. In the instant case, Gibson was convicted of two counts of a second degree felony and fined $10,000 for each count.
 {¶ 21} R.C. 2929.18(B)(1) provides:
"For a first, second, or third degree felony violation of any provisionof Chapter 2925 * * *, the sentencing court shall impose upon theoffender a mandatory fine of at least one-half of, but not more than, themaximum statutory fine amount authorized for the level of offensepursuant to division (A)(3) of this section. If an offender alleges in anaffidavit filed with the court prior to sentencing that the offender isan indigent person and is unable to pay the mandatory fine described inthis division, the court shall not impose the mandatory fine upon theoffender."
 {¶ 22} The filing of an affidavit of indigency by a defendant does not automatically entitle him to a waiver of the mandatory fine. Statev. Gipson (1998), 80 Ohio St.3d 626. R.C. 2929.18(B)(1) requires "imposition of the mandatory fine unless (1) the offender's affidavit is filed prior to sentencing, and (2) the trial court finds that the offender is an indigent person and is unable to pay the mandatory fines." Id. at 634. The Ohio Supreme Court has held that the requirement that an affidavit must be "filed" with the court prior to sentencing means that "the affidavit must be delivered to the clerk of court for purposes of filing and must be indorsed by the clerk of court, i.e., time-stamped, prior to the filing of the journal entry reflecting the trial court's sentencing decision." Id. at syllabus.
 {¶ 23} Moreover, the determination that a defendant is indigent for purposes of appointed counsel for his appeal is separate and distinct from a determination of being indigent for purposes of paying a mandatory fine. State v. Stearns, Cuyahoga App. No. 71851, 1997 Ohio App. LEXIS 4562.
 {¶ 24} Gibson urges this court to vacate the imposition of the mandatory fines pursuant to the holdings in State v. Pendleton (1995),104 Ohio App.3d 785, and State v. Lefever (1993), 91 Ohio App.3d 301. In both Pendleton and Lefever, the courts held that a trial court abuses its discretion by imposing mandatory fines where an indigent defendant has been sentenced to incarceration and is unable to pay the fine. We find that both cases are distinguishable from the instant case.
 {¶ 25} Unlike Pendleton and Lefever, Gibson failed to file an affidavit of indigency prior to the trial court's entry journalizing his sentence. In fact, the record before this court demonstrates that Gibson never filed an affidavit of indigency. Moreover, because the trial court made a determination of indigency only for purpose of appeal, Gibson was never found indigent pursuant to the statute. Accordingly, we find that the trial court did not abuse its discretion by imposing the mandatory fines.
 {¶ 26} Gibson's third assignment of error is overruled.
Judgment affirmed.
Anne L. Kilbane, P.J. and James J. Sweeney, J. Concur.
[1] Attorney James Gay has filed an amicus curiae brief raising three additional assignments of error, separate from the arguments raised by Gibson's appointed counsel. Because Gay is not Gibson's attorney of record and, therefore, is without standing to assert any assignments of error, we decline to address his arguments. See Kenwood Lincoln-Mercury,Inc. v. Daimlerchrysler Corp., Hamilton App. No. C-000784, 2002-Ohio-111
(holding that an amicus curiae lacks standing to present an assignment of error to which an appellate court must respond because it is not a party to an action, let alone an "aggrieved party"). See, also, App.R. 12.